In re MELNIKER HAMMOCK MFG. CO., Inc.

Appeal of L. C. CHASE & CO.

No. 86.

Circuit Court of Appeals, Second Circuit.

Dec. 8, 1930.

Henry E. Coleman, of New York City, for respondent.

C. Edward Benoit, of New York City (Julius J. Abeson, of New York City, of counsel), for appellant.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The bankrupt is a New York corporation which was in the business of manufacturing and selling hammocks and baby carriages, and whose sole officers and stockholders in 1929 were Saul Calmanson and Maurice Sandler. In August of that year, for reasons not now important, they disagreed, and it became impossible for them any longer to conduct the business of the corporation together. On August 26th, Sandler, by refusing to sign checks, made it impossible to withdraw any corporate funds from their bank. Work in their factory was stopped within a few days, and Sandler practically withdrew from the business, although shipments were made and he went into and out of the premises of the corporation daily until September 14th, when he ceased to appear there.

During this time Calmanson was in charge of all the corporation's affairs. He kept the bookkeeper, but there is considerable evidence tending to show that he did not have him keep books from which the financial conditions and business transactions of the bankrupt might be ascertained. If such books were kept, they were in part missing after the adjudication. A few days before the petition was filed, Calmanson took some corporate books to the office of the bankrupt's attorney and the attorney in due time turned over all such books to the trustee.

Each of the objecting creditors filed five specifications of objection. The special mas-

ter failed to find any of them proved. The District Court was of the same opinion, and they were all dismissed. We agree as to all of them except the first specification of L. C. Chase & Co. It is as follows:

"For the reason that the said bankrupt destroyed, mutilated, falsified, concealed or failed to keep books of account or records from which its financial condition and business transactions might be ascertained and in that the said bankrupt has destroyed, mutilated, falsified or concealed its following books and records from which its financial condition and business transactions might be ascertained to wit: its minute book, its stock transfer book, its stock certificates, its sales books, for the period prior to June 7th, 1929, its cash disbursement book, its cancelled bank vouchers and statements of its account in the Public National Bank & Trust Co., for the months of February, 1929, June, 1929, July, 1929, August, 1929, September, 1929; its purchase invoices both paid and unpaid; pages numbers 135 and 136 of its cash receipt book, numerous sheets of its customers' ledger, its sales book containing bill numbers 5,000 and upwards and further in that the said bankrupt assigned accounts receivable to divers persons and failed to keep records of said assignments and other transactions in its book of accounts."

The substance of the proof as to that and the manner in which the court dealt with it is well stated in the following quotation from its opinion:

"The first specification relates to missing books of account and records, and is sustained, in part, by the proof, for, as stated at page 106 of the testimony, an examination of the books and records made by an accountant failed to bring to light a cash disbursement book, cancelled bank vouchers for the months of February, June, July and August, 1929, purchase invoices, two missing sheets in the cash receipt book, and certain of the sales books.

"On the other hand, the general ledger of the company and the customers' ledger, and other books and records were available to the accountant, and were sufficient to enable him to construct a statement of the affairs of the company, although that statement was incomplete and, probably, could have been supplemented by records contained in the missing books.

"This specification would probably have to be sustained except for the testimony of Calmanson on Jan. 21, 1930, that ten days prior thereto he visited the place of business of the bankrupt corporation, and there observed a number of books and records which, to a certain extent, he identified as those reported missing by the accountant.

"If the trustee had been alert, he would have secured an adjournment of the hearing before the Special Master, for the purpose of bringing those books and records into Court, thus enabling the accountant either to verify or correct his incomplete statement of the condition of the bankrupt. As the trustee did not do this, it would seem as though the objecting creditors could have assumed the burden, and thus clarified a situation which the record leaves in an unsatisfactory condition.

"As it is, sufficient proof has not been offered to sustain this specification."

The applicable portions of the Bankruptcy Act are found in section 12d(2), 11 USCA § 30(d)(2), "The judge shall confirm a composition if satisfied that * * * (2) the bankrupt has not been guilty of any of the acts or failed to perform any of the duties which would be a bar to his discharge"; section 14b(2), as amended in 1926 (11 USCA § 32(b)(2), "The judge shall * * * discharge the applicant, unless he has * * * destroyed, mutilated, falsified, concealed, or failed to keep books of account, or records, from which his financial condition and business transactions might be ascertained; unless the court deem such failure or acts to have been justified, under all the circumstances of the case"; and the following, which was added to section 14b by the 1926 amendment (11 USCA § 32(b): "Provided, that if, upon the hearing of an objection to a discharge, the objector shall show to the satisfaction of the court that there are reasonable grounds for believing that the bankrupt has committed any of the acts which, under this paragraph (b), would prevent his discharge in bankruptcy, then the burden of proving that he has not committed any of such acts shall be upon the bankrupt."

This record amply shows reasonable grounds for believing that the bankrupt had committed some of these acts; and that the District Court recognized. With the proof standing thus, the act as amended in 1926 expressly requires the bankrupt to take up the burden of proving "that he has not committed any of such acts." It was error to hold the objecting creditors to a higher standard of proof in support of their specifications

than the amendment of 1926 requires and to dismiss a specification, "reasonable grounds for believing" having been shown, until the bankrupt discharged the burden which the amendment cast upon it and proved by a preponderance of the evidence that none of such disentitling acts had in fact been committed.

Quite apart from any showing of reasonable cause to believe that the bankrupt had concealed books of account or records, there was uncontradicted evidence that for a short time just preceding bankruptcy entries were not made in the books to show the disbursement of all money paid out. Calmanson collected in behalf of the bankrupt about $2,700 in September, 1929, before the voluntary petition was filed September 20th. He had the bookkeeper credit the accounts of the customers who paid, but no entries were made to show what was done with the money. It was not deposited in the bankrupt's checking account. Calmanson testified, however, that about two weeks before bankruptcy he paid $2,200 of it to an aunt and a brother-in-law of his to whom the bankrupt was indebted for loans not shown to have been protected by security. He did this by getting another brother-in-law to exchange his checks for checks which the bankrupt had received and used the checks so obtained to make the payments. When the bankrupt is held to the required burden of proof, it becomes apparent that this failure to enter payments made to relatives on the eve of bankruptcy would bar a discharge. The very manner of making the payments shows the intention to prevent their discovery by any inspection of the books and records of the bankrupt and that the failure to make the entries could not have been innocent.

As the bankrupt failed to discharge this burden, the specification was sufficiently supported by the evidence, under the provisions of the Bankruptcy Act as amended in 1926, and should have been sustained.

Order reversed.